C. C. DEBRELL AND ANOTHER V. JOEL PONTON, GUARDIAN, &c.

The holder of a note, which, by the acknowledgment of the administrator and the approval of the chief justice, has become a recognized claim against the estate of the deceased maker, which has been closed without payment of the debt, may subject the interest to which the estate was entitled, in property that has passed into the hands of the guardians of the heirs of the maker, without the intervention of an administrator *de bonis non,* although such guardian received the property from an estate in which his wards and the deceased debtor were jointly interested, and upon which the said debtor was administratrix, but as to which there had not been a final partition and distribution.

And where the maker of such note and her children were the distributees of the estate of her deceased husband, and one of the children died without issue, before the final settlement of his father's estate, and the portion of such child had not been set apart and separated from the balance of the estate, either before or at the time of its final settlement, the creditor seeking to subject the interest of the wife (then deceased) in the estate of her deceased child, and as one of the distributees of her deceased husband, alleging that it had passed into the hands of the guardian of the other children, may, for this purpose, prove the value of the property in the hands of the guardian, which is the same mentioned in the final settlement of the estate of their deceased father, but has not been partitioned.

A paper, headed "statement of distribution of the estate of Andrew Ponton, deceased, between the widow and the now surviving children as follows," purporting to be made out, approved, and signed by the chief justice of the County Court, and ordered by him therein to be spread upon the minutes, and found in the office of the county clerk among the papers of the said estate, not having been entered upon the minutes of the court, as an order, judgment, or decree, does not conclude the parties as a distribution of the said estate.

It is not entitled to the presumptions, in favor of its validity, that might be indulged in favor of an order regularly entered upon the record.

APPEAL from Lavaca. Tried below before the Hon. Fielding Jones.

This action was instituted by the appellants, to recover the amount of a promissory note given to them by Daniel C. Bellows and Mary his wife, which had been duly presented to the administrator of the said Mary Bellows, after her death, acknowledged by him, and approved by the chief justice.

Mary Bellows, previous to her intermarriage with Daniel C. Bellows, was the widow of Andrew Ponton, deceased, who died, leaving the said Mary his widow, and four minor children; and the said Daniel C. and Mary administered on his estate. While this administration was open, one of the minor children of the intestate, also died. In January previous to the death of the said Mary, there was a final settlement of the estate of Andrew Ponton, and the administrator and administratrix were discharged.

There appeared to have been no petition for, or order of distribution, either of the estate of the said Andrew Ponton, or that of his deceased child. The portion of Mrs. Bellows, in the estates of her husband and her deceased child, seemed to have been deducted from the inventory of the estate of the husband, and the remainder passed into the hands of Joel Ponton, the guardian of the three minor children of the said Andrew Ponton, deceased. The only evidence of a partition was contained in a written statement, showing in what manner the account of the administrator and administratrix of the estate of Andrew Ponton had been settled, which was found among the papers of Andrew Ponton, deceased, and was headed in these words: "Statement of the distribution of the estate of Andrew Ponton, "deceased, between the widow and the surviving children, as "follows, to wit:" the statement then went on to show the amount of the interest of the widow and administratrix in her deceased husband's estate, and also her interest in the estate of her deceased child, all of which was passed to her credit on the administration account of herself and husband, Bellows, upon the estate of her former husband. The statement concluded in these words: "I, Maryland Jones, chief justice, at the present "December Term, 1855, of Lavaca County Court for probate "purposes, have made and approved the above statement, and "order the same to be spread upon the minutes, and the orders "of allowances therein mentioned and hereby made. Given "under my hand this 3d day of January, 1856."

There was a general exception to the petition, with special

causes assigned, the principal of which were, the want of an administration upon the estate of Mary Bellows, and the fact that D. C. Bellows, one of the makers of the note, had not been made a party—the petition averring that he was notoriously insolvent. The exceptions were overruled, and the cause submitted to the court. On the trial, the plaintiff offered to prove the value of the lands that had passed into the hands of the guardian, and had been inventoried as belonging to the estate of said Andrew Ponton, deceased: this was excluded by the court, and judgment given for the defendant.

*Robert L. Ford*, for appellants.

*R. M. Tevis*, for appellee.

ROBERTS, J. The note sued on being executed by Bellows and wife, and she having died, was acknowledged by the administrator of her estate, and approved by the chief justice, ·and became a recognized claim against her estate. The estate having been closed, without this debt being paid, the plaintiff seeks by this action to follow the effects into the hands of the guardian of her heirs. For the purpose of establishing that she had not received her portion of her deceased son's estate, the plaintiff proposed to prove the value of the lands and negroes, which are in the possession of said guardian, and which is the same property mentioned in the final settlement of the estate of Andrew Ponton, deceased, made by Bellows and wife, as administrator and administratrix. One of the minor heirs of said Andrew died before this final settlement, and before the death of Mrs. Bellows, his mother. The portion of this deceased minor, to half of which she was entitled, was not separated and set apart from the balance of Andrew Ponton's estate, either before or at the time of this final settlement. This evidence as to the value of the lands, &c., was excluded by the court. The only ground upon which this evidence was regarded as immaterial, was, that there had been a partition after the

final settlement, by which Mrs. Bellows's interest in the estates of her former husband and deceased son, was fully awarded and set off to her. And whether or not there is such a partition, is the main question in the case.

It is shown by the transcript from the County Court, that there is a paper, found among the papers of Andrew Ponton's estate, purporting to be made out, approved and signed by the chief justice of the County Court, and by him therein ordered to be spread upon the minutes. It is headed, "statement of dis-"tribution of the estate of Andrew Ponton, deceased, between "the widow and the now surviving children, as follows," &c. By this, allowances in money were made to Mrs. Bellows, for her interest in the estates of her husband and deceased son, to an amount about sufficient to cover the balance of money shown by the final settlement to be in the hands of Bellows and wife, as administrator and administratrix of Andrew Ponton's estate.

We do not think that this instrument concluded the parties, because it was not entered upon the minutes of the court as an order, judgment, or decree of the court. (Hart. Dig. Art. 1231.) It is not, therefore, entitled to the presumptions in favor of its validity, that might be indulged for an order regularly entered upon the records. It does not appear that any one but the chief justice had anything to do with this "statement of distribution." There was no petition filed, asking a distribution; no parties were cited or appeared in the proceeding; no guardians were appointed to represent the minor heirs; no commissioners were appointed to value and divide the property; there was no adjudication, as to who were the parties entitled to distributive shares of the estate; and indeed, no steps were taken, in accordance with the statute, to make a valid binding distribution. (Hart. Dig. Art. 1198, 1199, 1205, 1206, 1209, 1215.)

Whether or not, then, Mrs. Bellows's share of the estate amounted to more than the money in her and her husband's hands, as shown by the final settlement, depended upon the value of the lands and slaves that remained on hand, undisposed.

44

of, and which have gone into the possession of the guardian, in right of the surviving heirs. Their value was, therefore, a legitimate subject of inquiry, on the trial, if such a suit can be maintained by a creditor, whose debt has been recognized and established as a valid claim, and has not been paid.

We see no reason to question the ruling of the court below sustaining the petition, seeking to follow this property, and subject it to the payment of this debt, in the hands of the guardians of the heirs. Other points in the case need not be noticed. As the court erred in excluding the said evidence, the judgment will be reversed, and the cause remanded.

Reversed and remanded.